UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIAN ROSE,

    Plaintiff,                                  Case No.

v.                                                  Hon.

AUTUMN FARMS DAIRY LLC.,

    Defendant.

<div style="border-left: 1px solid #000; padding-left: 10px;">

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 847-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com

</div>

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Christian Rose, by and through his attorneys HURWITZ LAW PLLC, and states the following:

## INTRODUCTION

1. Plaintiff Christian Rose is a Caucasian male who was previously employed by Defendant Autumn Farms Dairy, LLC as a Delivery Driver. Defendant's joint owner and Plaintiff's supervisor, Sean Perrin, cultivated a hostile work environment characterized by physical violence, verbal abuse, and ultimately

1

racially derogatory conduct. After a disagreement concerning holiday pay for the Juneteenth federal holiday, Mr. Perrin launched into a racially charged tirade against Plaintiff, twice asking him "are you a nigger?" and mockingly asking if Plaintiff wanted Martin Luther King Jr. Day off work. When Plaintiff verbally opposed Mr. Perrin's racial slurs, Mr. Perrin told him, "it will be the worst mistake you make." Mr. Perrin's management was thereafter intolerable for Plaintiff, who was constructively discharged as a result of Defendant's hostile work environment.

2. As such, Plaintiff brings this lawsuit against Defendant for money damages, reasonable attorneys' fees, costs, prejudgment interest, and other relief arising out of Defendant's violations of 42 U.S.C. § 1981 and Michigan's Elliot-Larsen Civil Rights Act of 1976.

## JURISDICTION AND PARTIES

3. Plaintiff Christian Rose is an individual residing in the City of Ypsilanti, County of Washtenaw, State of Michigan.

4. Defendant Autumn Farms Dairy LLC is a domestic limited liability company with its principal place of business in the City of Commerce, County of Oakland, State of Michigan.

5. This action arises under 42 U.S.C. § 1981, the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* and Michigan's Elliot-Larsen Civil Rights Act (the "ELCRA"), M.C.L.A. § 37.1101, *et seq.*

6. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 (federal question jurisdiction) and 28 U.S.C.A. § 1343(a)(4) (jurisdiction over civil rights claims). This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over Plaintiff's state law claims.

7. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the Defendant's principal place of business is located and is the district in which the events giving rise to Plaintiff's claims transpired.

8. The facts and unlawful employment practices within the meaning of Title VII and the ELCRA, and giving rise to this Complaint, occurred within the Eastern District of Michigan.

9. Defendant is an employer and Plaintiff was its employee, within the meaning of Title VII and the ELCRA, at all times material to this proceeding.

10. Plaintiff filed a timely charge of discrimination on August 8, 2022, with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the bases of his race and retaliation.

11. Plaintiff's charge was filed within 300 days of the unlawful employment practices alleged in this complaint.

12. Plaintiff received a Right to Sue Letter from the EEOC on August 23, 2023.

## **FACTUAL ALLEGATIONS**

13. Defendant is a for-profit company that operates a dairy distribution business.

14. Defendant is owned and operated by Michael Perrin and Sean Perrin.

15. Plaintiff was employed by Defendant in the position of Delivery Driver.

16. Throughout Plaintiff's employment, Plaintiff has been subjected to a hostile work environment cultivated by his supervisor and joint owner of Defendant, Sean Perrin.

17. At a time unknown to Plaintiff, but subsequent to the date of his hire with Defendant and prior to July 6, 2022, Mr. Perrin shoved Plaintiff to the ground and threatened Plaintiff with further violence.

18. Mr. Perrin's attack on Plaintiff only ceased when another employee intervened to prevent Mr. Perrin from engaging in further violence.

19. Throughout Plaintiff's employment with Defendant, Mr. Perrin has regularly harassed Plaintiff with terms such as "bitch", "asshole" and "pussy."

20. During Plaintiff's employment with Defendant, Mr. Perrin has told Plaintiff to "go fuck himself."

21. During Plaintiff's employment with Defendant, Mr. Perrin has threatened to kill Plaintiff.

22. On or about June 20, 2022, Plaintiff discussed with a colleague whether they would receive holiday pay for working on June 19, 2022, being the federal holiday Juneteenth.

23. Upon returning from their delivery route, Plaintiff and the colleague asked Mr. Perrin about their holiday pay for the Juneteenth federal holiday.

24. Plaintiff asked Mr. Perrin if Juneteenth was a holiday, to which Mr. Perrin replied that it was.

25. Plaintiff responded with words to the effect of "Sweet, I'll take that holiday pay."

26. The following week, when Plaintiff received his paycheck, he realized he had not received holiday pay for the Juneteenth holiday, despite having worked that day.

27. Plaintiff asked Mr. Perrin about whether he would receive holiday pay for having worked on the Juneteenth holiday.

28. Plaintiff did not receive a response.

29. On or about July 6, 2022, Plaintiff attended work and noticed that his clipboard contained a cheque from a customer from the previous day.

30. Plaintiff telephoned Mr. Perrin for advice as to how to handle the cheque.

31. Mr. Perrin instructed Plaintiff to leave the cheque with its assigned paperwork.

32. Less than a minute following the end of that call, Mr. Perrin called Plaintiff back, saying words to the effect of "Why are you harassing the office about getting paid for Juneteenth?"

33. Mr. Perrin said to Plaintiff, "Why should I pay you for Juneteenth, are you a nigger?"

34. Shocked by Mr. Perrin's racially discriminatory conduct, Plaintiff said words to the effect of "What do you mean?"

35. In response, Mr. Perrin became enraged and said to Plaintiff "Answer the question, are you a nigger?"

36. When Plaintiff responded that Mr. Perrin had previously stated that Plaintiff would receive holiday pay for Juneteenth, Mr. Perrin shouted at Plaintiff, "Don't put words into my mouth, it will be the worst mistake you make, I told you it was a holiday, not that you were getting paid for it!"

37. Employees Riley Charbonneau and Megan Casler witnessed this telephone call.

38. Later that day, Plaintiff approached Mr. Perrin. Mr. Perrin said to Plaintiff "so, I suppose you expect me to give you Martin Luther King Jr. Day off too, huh?"

39. At this point, Plaintiff determined that he would no longer be able to tolerate Mr. Perrin's racially derogatory conducted and the hostile work environment cultivated by Mr. Perrin.

40. Mr. Perrin's physical and verbal abuse against Plaintiff, together with his racially derogatory conduct, created a hostile work environment that Mr. Perrin designed to inculcate a sense of fear and inferiority in his employees.

41. Plaintiff completed his work for the day and drove to Michael Perrin's house to report Sean Perrin's hostile and racially derogatory conduct.

42. Plaintiff told Michael Perrin that the working conditions created by Mr. Perrin were such that Plaintiff felt compelled to resign.

43. In response, Michael Perrin shook Plaintiff's hand.

44. Upon information and belief, Michael Perrin failed to address Sean Perrin's behavior.

45. The working conditions created by Mr. Perrin were such that any reasonable person would feel compelled to resign.

46. It was reasonably foreseeable that Mr. Perrin's abusive and racially derogatory conduct would impact Defendant's employees negatively.

47. Plaintiff was constructively discharged from Defendant.

## COUNT I
## DISCRIMINATION IN VIOLATION OF
## 42 U.S.C. § 1981

48. Plaintiff incorporates by reference herein the foregoing paragraphs.

49. To establish a § 1981 racial discrimination claim, Plaintiff must "plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)." *Amini v. Oberlin College*, 440 F.3d 350 (6th Cir. 2006).

50. Plaintiff is a member of a protected class (Caucasian).

51. By using racially derogatory conduct towards Plaintiff, including calling him a "nigger", Defendant intended to discriminate against Plaintiff on the basis of race.

52. But for Plaintiff's Caucasian race, Defendant would not have engaged in racially discriminatory conduct against Plaintiff.

53. Defendant used the term "nigger" to deride Plaintiff specifically because Defendant believed that Plaintiff's Caucasian race would preclude Plaintiff objecting to the use of the term.

54. Defendant's discriminatory conduct deprived Plaintiff of his right to the enjoyment of all benefits, privileges, terms and conditions of employment "as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981(b), as amended.

55. Plaintiff was treated differently, discriminated against, and eventually was forced to resign because of his race, in whole or in part.

56. Defendant's treatment, practices and policies directed toward Plaintiff, as more fully described in this complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property "as enjoyed by white citizens," in violation of 42 U.S.C. § 1981, as amended.

57. Through Defendant's actions and treatment of Plaintiff, there is ample evidence that Defendant intended to discriminate against Plaintiff on the basis of his race.

## COUNT II
## DISCRIMINATION IN VIOLATION OF
## MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT
## M.C.L. 37.2202(a)(1)

58. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

59. Defendant employed Plaintiff within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2010 et seq. ("ELCRA").

60. Defendant is an employer within the meaning of the ELCRA.

61. The ELCRA prohibits, *inter alia*, discrimination based upon race.

62. Plaintiff is a Caucasian male.

63. Plaintiff was qualified for his position.

64. Defendant discriminated against Plaintiff with regard to his employment because of his race.

65. Plaintiff suffered adverse actions, including forced resignation, as a result of Defendant's discriminatory conduct.

66. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff was harmed, and continues to be harmed, in that they have suffered economic and non-economic loss, including but not limited to: lost wages; damages

to professional reputation; emotional distress; outrage, humiliation; indignity and disappointment.

## COUNT III
## RETALIATION IN VIOLATION OF
## MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT
## M.C.L. 37.2701(a)

67. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

68. Defendant employed Plaintiff within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2010 et seq. ("ELCRA").

69. Defendant is an employer within the meaning of the ELCRA.

70. The ELCRA prohibits, *inter alia*, retaliation against a person because the person has opposed a violation of the ELCRA.

71. Defendant discriminated against Plaintiff with regard to his employment because of his race.

72. Plaintiff vocally opposed Defendant's discriminatory conduct.

73. Defendant retaliated against Plaintiff's opposition to its discriminatory conduct by harassing him and ultimately forcing him to resign.

74. Plaintiff suffered adverse actions, including forced resignation, as a result of Defendant's retaliatory conduct.

75. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff was harmed, and continues to be harmed, in that they have suffered

economic and non-economic loss, including but not limited to: lost wages; damages to professional reputation; emotional distress; outrage, humiliation; indignity and disappointment.

**COUNT IV**
**RETALIATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. 2000(e)(3)(a)**

76. Plaintiff incorporates the preceding allegations as if fully set forth herein.

77. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

78. Plaintiff engaged in protected activity by requesting time off work on Juneteenth.

79. Defendant subsequently subjected Plaintiff to a hostile work environment by making racist comments

80. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to his protected activity.

81. But for Plaintiff's protected activity, Defendant would not have subjected him to such adverse actions.

82. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

## COUNT V
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e

83. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

84. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

85. Plaintiff is a member of a protected class based on his race (caucasian).

86. Defendant's racist conduct created a hostile work environment based on race.

87. This conduct was objectively and subjectively offensive such that a reasonable person would find it hostile or abusive.

88. Plaintiff found this conduct both objectively and subjectively offensive.

89. Defendant had actual and constructive notice that its employee had created a hostile and offensive work environment for Plaintiff.

90. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of his earning capacity and ability to work and will so suffer in the

future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

A.  Judgment against Defendant in the amount of Plaintiff's unpaid back pay, front pay, injunctive relief, declaratory judgment, liquidated damages, punitive damages, and attorney fees under Section 1981, Title VII and the ELCRA;

B.  Award Plaintiff appropriate equitable relief, compensatory damages, and exemplary damages;

C.  Award Plaintiff appropriate civil penalties;

D.  Award Plaintiff all costs, attorneys' fees, and interest incurred prosecuting this claim; and

E.  All further relief as this Court deems just and equitable.

<div style="text-align: right;">
Respectfully submitted<br>
HURWITZ LAW PLLC<br><br>
<i>/s/ Noah S. Hurwitz</i><br>
Noah S. Hurwitz (P74063)<br>
Attorney for Plaintiff
</div>

Dated:   October 23, 2023

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHRISTIAN ROSE,

      Plaintiff,                Case No.

v.                                        Hon.

AUTUMN FARMS DAIRY LLC.,

      Defendant.

| |
|---|
| Noah S. Hurwitz (P74063)<br>Grant M. Vlahopoulos (P85633)<br>HURWITZ LAW PLLC<br>Attorneys for Plaintiff<br>340 Beakes St., Ste. 125<br>Ann Arbor, MI 48104<br>(844) 847-9489<br>Noah@hurwitzlaw.com<br>Grant@hurwitzlaw.com |

## **JURY DEMAND**

NOW COMES Plaintiff Christian Rose by and through his attorneys HURWITZ LAW PLLC, and hereby demands a trial by jury of the issues in the above-captioned cause of action.

                                     Respectfully submitted
                                     HURWITZ LAW PLLC

                                     */s/ Noah S. Hurwitz*
                                     Noah S. Hurwitz (P74063)
Dated: October 23, 2023           Attorney for Plaintiff